## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

David B. Johnson,                                Civil No. 11-2610 (RHK/JJG)

        Petitioner,

v.                                                          REPORT AND RECOMMENDATION

Jessica Symmes,

        Respondent.

---

JEANNE J. GRAHAM, United States Magistrate Judge

Petitioner David B. Johnson brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging nineteen grounds for relief. Respondent Jessica Symmes asks the Court to deny the petition on the grounds of non-exhaustion and procedural default, and on the merits. For the reasons set forth below, the Court recommends that the petition be denied in its entirety with prejudice.

## I.      PROCEDURAL HISTORY

### A.      Petitioner's Trial, Sentencing, and Direct Appeals

Petitioner and four co-defendants were charged in January 2004 with kidnapping or aiding and abetting kidnapping, and with attempted first-degree murder or aiding and abetting attempted first-degree murder. *State v. Johnson*, No. A05-1028, 2006 WL 2347795, at *1 (Minn. Ct. App. Aug. 8, 2006). Initially, Petitioner was represented by an appointed attorney, but he discharged his attorney on the first day of trial and represented himself for the remainder of the proceedings. *Id.*

The victim, J.R., and two co-defendants testified against Petitioner at trial. J.R. testified that on November 6, 2003, she got into an argument with several female acquaintances. *Id.* The women bound and gagged J.R. and put her in a closet. *Id.* J.R. was also acquainted with Petitioner and heard him talking outside the closet a few hours later. *Id.* Petitioner opened the door and kicked J.R. in the head more than ten times. *Id.* Petitioner and two accomplices then beat J.R. into unconsciousness. *Id.* She awoke in the trunk of her moving car. *Id.* She tried to escape when the car stopped, but Petitioner caught her and held her while one of his accomplices shot her twice with a shotgun at close range. *Id.* Rochelle Coney and Kenneth Daniels corroborated J.R.'s testimony. *Johnson v. State*, No. A09-1628, 2010 WL 2485653, at *3 (Minn. Ct. App. June 22, 2010). Petitioner's defense was that he was in North Dakota during the kidnapping and shooting. *Johnson*, 2006 WL 2347795, at *1.

A jury convicted Petitioner of aiding and abetting kidnapping and aiding and abetting attempted first-degree murder. *Id.* The trial court empanelled a separate sentencing jury, which found three aggravating factors relating to both offenses. *Id.* The court departed upward from the presumptive guideline sentences and imposed consecutive 240-month terms of imprisonment. *Id.* The sentencing calculation included two criminal history points for an Illinois burglary conviction and Petitioner's probationary status. *Id*. at *18.

Petitioner appealed his conviction and sentence to the Minnesota Court of Appeals, alleging the following points of error: (1) he did not receive a speedy trial; (2) the trial court erred by accepting his waiver of counsel and not appointing substitute counsel; (3) he was not allowed to call Broderick Thomas as an alibi witness; (4) the prosecutor committed misconduct in his closing argument by commenting on Petitioner's lack of alibi witnesses; (5) the prosecutor misstated facts in his closing argument; (6) the trial court misstated the law in response to a jury

2

question about accomplice liability; (7) the trial court wrongly convened a sentencing jury to determine whether aggravating factors supported an upward departure; (8) the record from the sentencing trial did not support the sentencing jury's findings; (9) the trial court did not find severe aggravating factors to support the upward departure; and (10) the trial court wrongly assigned criminal history points. The Minnesota Court of Appeals affirmed the trial court on all points except the criminal history calculation. Finding that the State did not adequately prove Petitioner's prior criminal history, the appellate court remanded the case for resentencing with instructions to redact the criminal history points from the calculation. *Id.* at *19. The Minnesota Supreme Court denied review on December 13, 2006.

The trial court resentenced Petitioner on May 2, 2007, again imposing consecutive 240-month sentences. *See State v. Johnson*, No. A07-1480, 2008 WL 2966825, at *1 (Minn. Ct. App. Aug. 5, 2008). The court omitted Petitioner's criminal history from its computation, but departed upward based on the aggravating factors previously found by the sentencing jury. *Id.* at *2. Petitioner appealed the new sentence, and the Minnesota Court of Appeals affirmed. *Id.* at *1. The Minnesota Supreme Court denied review on October 1, 2008.

### B.      Petitioner's First Federal Habeas Petition

After the Minnesota Supreme Court denied review of Petitioner's first direct appeal, but before Petitioner was resentenced by the trial court, Petitioner filed a habeas petition pursuant to 28 U.S.C. § 2254 in federal court. *Johnson v. Dingle*, Civ. No. 07-4793 (RHK/JJG) (D. Minn. filed Dec. 10, 2007). He raised issues identical to those raised in his first direct appeal, except for the sentencing issue on which he had prevailed. *See* Report and Recommendation ("R&R") at 2, *Johnson*, Civ. No. 07-4793 (RHK/JJG) (D. Minn. July 3, 2008), ECF No. 12. Petitioner moved to stay the petition a week after filing it, pending the outcome of a post-conviction petition he

3

intended to file in state court. *See id.* at 2. Respondent Lynn Dingle opposed the stay, contending that dismissal without prejudice was more appropriate. *See id.* at 2-3.

This Court recommended that the petition be dismissed without prejudice because the Court could not discern on the record before it whether the prospective post-conviction petition would include issues in the habeas petition, and thus, consideration of the habeas petition was premature. *Id.* at 4. The Court explained that Petitioner would not lose his right to petition for habeas relief because the one-year limitations period of 28 U.S.C. § 2244(d)(1)(A) would not begin to run until both his conviction and sentence became final by the conclusion of direct review. *Id.* at 5 (citing *Burton v. Stewart*, 549 U.S. 147 (2007)). Specifically, because Petitioner's direct appeal of his resentencing was pending, the state court judgment was not yet final for the purpose of applying § 2244(d)(1)(A)'s one-year clock. *Id.* at 5. Respondent Dingle did not object to any of the R&R's findings or conclusions, and the Honorable Richard H. Kyle, United States District Judge, adopted the R&R and dismissed the petition without prejudice. Order at 1, *Johnson*, Civ. No. 07-4793 (RHK/JJG) (D. Minn. July 23, 2008), ECF No. 13.

### C.      Petitioner's First Post-Conviction Petition

Petitioner filed a petition for post-conviction relief in Hennepin County District Court on June 23, 2009. (Resp't App. at 315-33, ECF No. 9.) He filed an amended petition on July 24, 2009. (Resp't App. at 343-68.) Petitioner alleged that (1) his trial lawyer was ineffective, which forced him to represent himself; (2) his conviction was based on insufficient evidence, namely the false testimony of Kenneth Daniels and Rochelle Coney; and (3) the sentencing court's grounds for departing upward were insufficient. (Resp't App. at 371, 380.) The trial court denied the petition on all grounds in two separate orders. (Resp't App. at 370-76, 379-81.) The

Minnesota Court of Appeals affirmed in all respects, *see Johnson,* 2010 WL 2485653, at *1, and Petitioner did not appeal to the Minnesota Supreme Court.

### D. Petitioner's Second Federal Habeas Petition

Petitioner filed a second federal habeas petition on November 18, 2008, less than two months after the Minnesota Supreme Court denied review of his second direct appeal. *Johnson v. King*, Civ. No. 08-6064 (RHK/JJG) (D. Minn. filed Nov. 18, 2009). He raised essentially the same claims as his first petition and also challenged the trial court's reliance on aggravating factors to depart upward at resentencing. *See* R&R at 3-4, *Johnson*, Civ. No. 08-6064 (RHK/JJG) (D. Minn. July 10, 2009), ECF No. 17. After Respondent King answered the petition, Petitioner filed a request to stay the proceeding so that he could file a second post-conviction petition with the trial court. *See id.* at 4. Petitioner claimed he had discovered new evidence of his innocence and of prosecutorial misconduct. *See id.*

As ample time remained on AEDPA's one-year clock, this Court recommended that the case be dismissed without prejudice rather than stayed. *See id.* at 8-9. The Honorable Richard H. Kyle affirmed the R&R on July 31, 2009. Order at 1, *Johnson*, Civ. No. 08-6064 (RHK/JJG) (D. Minn. July 31, 2009), ECF No. 18.

### E. Petitioner's Third Federal Habeas Petition

Petitioner filed a third federal habeas petition on December 7, 2009. *Johnson v. Symms [sic]*, Civ. No. 09-3481 (PAM/JJG) (D. Minn. filed Dec. 7, 2009). That action was dismissed without prejudice on Petitioner's motion to voluntarily dismiss the petition, which Petitioner filed after he realized his petition contained both exhausted and unexhausted claims. R&R at 2, *Johnson*, Civ. No. 09-3481 (PAM/JJG) (D. Minn. Apr. 5, 2010), ECF No. 17; Order at 1, *Johnson*, Civ. No. 09-3481 (PAM/JJG) (D. Minn. Apr. 27, 2010), ECF No. 18.

**F.      Petitioner's Second Post-Conviction Petition**

Petitioner filed his second post-conviction petition in state court on September 28, 2010. (Resp't App. at 510-42.) He sought a new trial based on allegedly new evidence including a Google map and affidavits from Broderick Thomas and his co-defendants. The trial court summarily denied the petition because the map had been available at the time of trial and because any claims based on the affidavits were procedurally defaulted. (Resp't App. at 554-59.) The Minnesota Court of Appeals affirmed on August 1, 2011. *Johnson v. State*, No. A10-2057, 2011 WL 3241858 (Minn. Ct. App. Aug. 1, 2011). The Minnesota Supreme Court denied review on October 18, 2011.

**G.      Petitioner's Fourth Federal Habeas Petition**

Petitioner commenced the instant case by filing his fourth federal habeas petition on September 12, 2011. He alleges nineteen grounds for relief: (1) the denial of his right to a speedy trial, (2) the trial court's acceptance of his waiver of right to counsel without appointing substitute counsel, (3) the trial court's exclusion of an alibi witness, (4) the prosecutor's comment to the jury that Petitioner had not called an alibi witness, (5) the prosecutor's summation of facts during closing argument, (6) the trial court's instruction to the jury on accomplice liability, (7) the trial court's empanelment of a sentencing jury and departure from the presumptive guideline sentence, (8) the sufficiency of the grounds supporting the sentencing departure, (9) the allegedly false testimony given by Kenneth Daniels, (10) the allegedly false testimony given by Rochelle Coney, (11) the allegedly false testimony given by Charles Resch, (12) the prosecutor's failure to disclose exculpatory evidence, (13) the trial court's remarks to proposed defense witness Billy King, (14) the prosecutor's coaching of Kenneth Daniels, (15) the denial of an evidentiary hearing on the testimony of Kenneth Daniels, (16) the denial of

an evidentiary hearing on the testimony of Rochelle Coney, (17) the denial of an evidentiary hearing regarding a Google map and Resch's testimony, (18) the denial of an evidentiary hearing concerning the testimony of Billy King, and (19) the denial of an evidentiary hearing regarding co-defendant Matthew Glover. (Pet. at 7-16, ECF No. 1.)

In Respondent's original response to the petition, she argued that eleven of Petitioner's claims were not exhausted, noting that his second petition for post-conviction relief was pending before the Minnesota Supreme Court. Respondent further argued that three claims were procedurally defaulted and another five were meritless. Five days after filing the response, Respondent informed the Court that the eleven claims were exhausted, based on the denial of review by the Minnesota Supreme Court. (Brown Letter, Oct. 19, 2011, ECF No. 11.)

### H. Events After the Fourth Habeas Petition Was Filed

When Petitioner filed his most recent habeas petition, he was incarcerated at the Minnesota Correctional Facility in Oak Park Heights, Minnesota ("MCF-Oak Park Heights"). On or about November 1, 2011, Petitioner wrote a letter to the Clerk of Court, stating he had been transferred to a prison in Cumberland, Maryland, and was concerned that the Court had not received his memorandum in support of his petition. (Johnson Letter, ECF No. 14.) He wrote another letter on approximately November 16, 2011, to express his concern that he had not received copies of the Respondent's filings. (Johnson Letter, ECF No. 15.) The Court responded to Petitioner's concerns in an Order dated December 9, 2011, instructing Respondent to mail copies of all recent filings to Petitioner at his new address and granting Petitioner an extension of time to file a reply to the response. (Order, Dec. 9, 2011, ECF No. 16.) The Court also noted that Petitioner's transfer did not deprive the Court of jurisdiction to adjudicate the petition, and venue remained appropriate in the District of Minnesota. *See Wilkins v. Erickson*, 484 F.2d 969, 973

7

(8th Cir. 1973) (permitting habeas petitioner to seek relief in the state of his conviction and sentencing, despite his transfer to a facility in another state). Respondent has not challenged that finding or moved to transfer this action to Maryland.

On December 12, 2011, Petitioner filed a motion for reconsideration of the appointment of counsel and for the appointment of an investigator. (Pet'r Mot. Reconsideration, ECF No. 19.) He claimed he has been in administrative segregation since his transfer and has not had access to any of his legal materials or a law library. On January 23, 2012, Petitioner filed a ninety-one page handwritten reply to the response to the petition. (Reply, ECF No. 21.) The content of the reply and the attached exhibits demonstrate that Petitioner had ample access to his legal materials and sources of law.

## II.    DISCUSSION

As stated by the United States Supreme Court in *Preiser v. Rodriguez*, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." 411 U.S. 475, 484 (1973). On review of a habeas petition brought pursuant to 28 U.S.C. § 2254, a court determines whether the incarceration of a state prisoner violates the United States Constitution or United States Supreme Court precedent. 28 U.S.C. § 2254(a).

### A.    Procedurally Defaulted Claims Due to Lack of Fair Presentation

Before a state prisoner may seek federal habeas relief under § 2254, he "must 'fairly present' his federal claims to the state courts." *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010). The purpose of this requirement is to give state courts the first opportunity to correct errors alleged by state prisoners. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). To satisfy the fair presentation requirement, the prisoner must present the federal nature of his claim to each

level of the state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). When a state has two tiers of appellate review, a petitioner must raise his federal claims to both levels before presenting his claims in a federal habeas petition. *O'Sullivan*, 526 U.S. at 845 (finding procedural default when petitioner raised three federal claims to the state intermediate appellate court but not in his petition for review to the state supreme court).

To fairly present federal claims at the state level, the prisoner must do more than simply outline the underlying facts or "make a general appeal to a constitutional guarantee as broad as due process." *Turnage*, 606 F.3d at 936 (quotations omitted). At a minimum on direct appeal, the prisoner must "explicitly refer[] the state courts to the United States Constitution or federal case law." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (citations omitted). If a state prisoner does not fairly present a federal claim to the state courts, and the claim could no longer be reviewed because of a state procedural rule, the claim is procedurally defaulted. *Turnage*, 606 F.3d at 936. A federal court is prohibited from reviewing a procedurally defaulted habeas claim unless the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## 1.    Ground Four

Petitioner's fourth ground for relief is that he was denied a fair trial when the prosecutor commented to the jury about his failure to call an alibi witness, attempted to shift the burden of proof during his closing argument, and included Officer Resch's testimony in his closing argument. Although Petitioner included the first two arguments in his direct appeal to the Minnesota Court of Appeals and Minnesota Supreme Court, he cited only state law. (Resp't App. at 40-42, 158-59.) He did not explicitly refer to the United States Constitution or to any other

federal law. Petitioner did not directly appeal the prosecutor's reference to Officer Resch's testimony, on either state or federal law grounds.

Any federal claims subsumed in Ground Four can no longer be reviewed by the Minnesota state courts because of the procedural rule announced in *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976). Under *Knaffla*, once a conviction has been directly appealed, all claims that were raised or could have been raised are barred from future review by the state courts. *Id.* at 741. Petitioner could have raised his federal claims on direct appeal, but he did not. The effect on federal habeas review is that the claims may not be considered unless Petitioner can show cause for the default and actual prejudice, or that a fundamental miscarriage of justice will occur if his claims are not heard. *See Murphy v. King*, 652 F.3d 845, 849-50 (8th Cir. 2011).

To satisfy the "cause" requirement, Petitioner must show that some external reason prevented him from presenting the federal nature of his claim to each level of the Minnesota courts. *See Coleman*, 501 U.S. at 750. Petitioner has not done so. Moreover, considering that he presented the state law nature of his claim, the Court sees no reason why he could not have also raised a federal claim. The Court need not consider prejudice in the absence of cause. *See McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997).

To satisfy the "fundamental miscarriage of justice" exception, Petitioner must come forward with "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see also Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010). Petitioner has presented no such evidence. The self-serving and conclusory affidavits offered by Petitioner are unconvincing and untrustworthy. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993) (finding new evidence in the form of affidavits inherently suspicious because statements "are obtained without the benefit of cross-examination and an

opportunity to make credibility determinations."); *Morales v. Johnson*, 659 F.3d 588, 606 (7th Cir. 2011) (stating "convicted felons have diminished credibility.") Furthermore, the victim's "testimony alone is more than sufficient to support the guilty verdicts." *Johnson*, 2010 WL 2485653, at *2. Consequently, Ground Four is procedurally defaulted, and the Court may not consider it.

### 2.     Ground Five

In Ground Five of the petition, Petitioner contends the trial court erred by sustaining the prosecutor's objection to his closing argument and overruling his objections to the prosecutor's closing argument. Petitioner takes specific issue with the prosecutor's summation of the testimony of Rochelle Coney and Kenneth Daniels. However, Petitioner did not present the federal nature of his claim to either level of the Minnesota state courts. (Resp't App. at 43-45, 159.) Thus, the claim is procedurally defaulted. Petitioner has shown neither cause for the default nor the potential for a fundamental miscarriage of justice if the claim is not reviewed. Accordingly, the Court may not review this claim.

### 3.     Ground Eight

Petitioner alleges in Ground Eight of the petition that his sentence should be reduced to the presumptive limit because the court's and jury's findings were insufficient to support the upward sentencing departures. Although Petitioner mentioned in passing a United States Supreme Court case to the Minnesota Court of Appeals in his brief (Resp't App. at 62), he did not refer to a federal case or the United States Constitution in petitioning for review of this alleged error by the Minnesota Supreme Court (Resp't App. at 154, 160). The claim, therefore, is procedurally defaulted. Petitioner has shown neither cause for the default nor the potential for a

fundamental miscarriage of justice if the claim is not reviewed. As such, the claim is not cognizable on federal habeas review.

### 4.    Grounds Nine and Fifteen

In Count Nine of the petition, Petitioner submits that prosecution witness Kenneth Daniels gave false testimony against him, which Daniels later recanted in an affidavit. Relatedly, in Ground Fifteen, Petitioner contends he was denied an evidentiary hearing on Daniels' testimony and affidavit.

Petitioner raised these claims in his first post-conviction petition, citing *Larrison v. United States*, 24 F.2d 82 (7th Cir. 1928), as his authority for a new trial. (Resp't App. at 357.) *Larrison* established a three-part test to govern whether a new trial should be granted based on recanted testimony. 24 F.2d at 87-88. *Larrison* is not a precedent of the United States Supreme Court, however, and therefore cannot found the basis for federal habeas relief. *See Turnage*, 606 F.3d at 939 ("*Larrison* has no readily discernible constitutional underpinnings."). Moreover, as the Eighth Circuit Court of Appeals noted in *Turnage*, most circuit courts of appeals, including the Eighth Circuit, have rejected the *Larrison* test in favor of a probability test. *Id.* at 938. Thus, a state court's application of the *Larrison* test is "entirely a matter of state law," *id.* at 939-40, and does not provide a basis for relief pursuant to 28 U.S.C. § 2254.

As with the petitioner in *Turnage*, Petitioner did not cite any relevant Supreme Court precedent to the state trial court or state court of appeals in support of his claims based on Daniels' recanted testimony. *See id.* at 940. Perhaps even more importantly, Petitioner did not petition the Minnesota Supreme Court for review of the Minnesota Court of Appeals' decision, thereby striking a double blow to his claims.

Because Petitioner did not fairly present the federal nature of Grounds Nine and Fifteen to any level of the Minnesota state courts, the claims are procedurally defaulted. Petitioner has shown neither cause for the default nor the potential for a fundamental miscarriage of justice if the claims are not reviewed. As a result, the Court is barred from considering the claims.

### 5.      Ground Fourteen

In Ground Fourteen, Petitioner asserts the prosecutor committed misconduct by coaching witness Kenneth Daniels. On Petitioner's first round of post-conviction review, the Minnesota Court of Appeals declined to consider this claim because Petitioner did not present it to the state district court in either his first original petition or his first amended petition. *Johnson*, 2010 WL 2485653, at *3. Petitioner also failed to fairly present this claim to the Minnesota Supreme Court, when he did not petition for review of the court of appeals' decision. Thus, the claim is procedurally defaulted. Petitioner has shown neither cause for the default nor the risk for a fundamental miscarriage of justice if the claim is not considered now.

### 6.      Ground Nineteen

In Ground Nineteen of the petition, Petitioner challenges the state district court's refusal to hold an evidentiary hearing on an affidavit submitted by Matthew Glover, also known as Dough Boy. J.R. testified at trial that Glover shot her while Petitioner held her down. (Resp't App. at 17.) Glover states in his affidavit that Petitioner was not present at the shooting and had no knowledge of it. (Resp't App. at 532.) Glover is presently incarcerated at the Minnesota Correctional Facility in Moose Lake, Minnesota. (*Id.*)

Petitioner first presented Glover's affidavit to the state courts with his second petition for post-conviction relief. Although the opening sentence of the post-conviction petition generally refers to the Fourteenth Amendment to the United States Constitution, there is no mention of any

federal constitutional provision or federal case in the discussion of Glover's affidavit or Petitioner's request for an evidentiary hearing on the affidavit. Thus, Petitioner did not fairly present the federal nature of this claim to the state district court.

Petitioner did not even mention Glover's affidavit in his brief to the Minnesota Court of Appeals, much less raise a federal claim concerning it. In support of his request for an evidentiary hearing concerning a different item of allegedly new evidence, he cited only Minnesota statutes and cases. Thus, Petitioner did not fairly present the federal nature of this claim to the state appellate court.

Petitioner discussed the contents of Glover's affidavit in his petition for review to the Minnesota Supreme Court, but he did not provide any legal basis, federal or state, in support of his claim that the district court erred by not holding an evidentiary hearing on Glover's affidavit. Thus, Petitioner did not fairly present the federal nature of this claim to the state supreme court.

In sum, the claim raised in Ground Nineteen of the petition is procedurally defaulted. Petitioner has not shown cause for the default or the danger of a fundamental miscarriage of justice if the claim is not considered. Accordingly, the Court may not review the claim.

### B.     Claims Deemed Procedurally Barred By the Minnesota Courts

Under Minnesota law, once a conviction has been directly appealed, all claims that were raised or could have been raised are barred from future review by the state courts. *Knaffla*, 243 N.W.2d at 741. Here, Petitioner has raised several claims that the Minnesota courts have considered and deemed barred under *Knaffla*: the allegedly false testimony given by prosecution witness Rochelle Coney (Ground Ten); the allegedly false testimony by Officer Resch about the distance between Grand Forks, North Dakota, and Minneapolis, Minnesota (Ground Eleven); alleged prosecutor misconduct for failure to disclose exculpatory evidence (Ground Twelve);

14

denial of an evidentiary hearing on the testimony of Rochelle Coney (Ground Sixteen); denial of an evidentiary hearing regarding a Google map (Ground Seventeen); and denial of an evidentiary hearing concerning the testimony of Billy King (Ground Eighteen).

### 1.     Grounds Ten and Sixteen

Beginning with Coney's testimony, the Minnesota Court of Appeals opined on review of Petitioner's first post-conviction petition that any challenge based on Coney's testimony should have been raised in Petitioner's direct appeal and was therefore barred by *Knaffla*. *Johnson*, 2010 WL 2485653, at *3. Petitioner did not petition the Minnesota Supreme Court for review of this decision. Thus, the claims are barred from federal habeas review for two reasons: procedural bar under *Knaffla* and lack of fair presentation to every tier of the state court system. Petitioner has not shown cause for the default or that a fundamental miscarriage of justice will result if his claims are not considered.

### 2.     Grounds Eleven and Seventeen

With regard to the Google map and Officer Resch's testimony, the Minnesota Court of Appeals remarked on review of Petitioner's second post-conviction petition that Petitioner could have raised the arguments on direct appeal. *Johnson*, 2011 WL 3241858, at *2. Because he did not, the claims were barred by *Knaffla*. *Id.*

The question for this Court, then, is whether Petitioner has demonstrated cause and actual prejudice or the risk of a fundamental miscarriage of justice. As noted by the Minnesota Court of Appeals, Petitioner could have used a map or atlas during his trial to impeach Officer Resch's testimony about the distance between Grand Forks and Minneapolis. *Id.* Thus, there is no cause for the default. Furthermore, the new map did not undermine the victim's testimony that she knew Petitioner, that he kicked her head, and that he held her down while another person shot

15

her. *Id.* In light of this testimony, declining to consider Grounds Eleven and Seventeen on federal habeas review would not be a miscarriage of justice.

### 5.     Ground Twelve

Petitioner contends in Count Twelve of the Petition that the prosecutor failed to disclose exculpatory evidence, namely a computer printout from Expedia.com showing the distance between Grand Forks, North Dakota, and Minneapolis, Minnesota. Petitioner did not raise this argument in his direct appeal, in his first post-conviction petition, or in his second post-conviction petition. The first time Petitioner made this argument was to the Minnesota Court of Appeals when he appealed the denial of his second post-conviction petition. The Court of Appeals determined that the claim could have been raised on direct appeal and was therefore barred by *Knaffla*. *Johnson*, 2011 WL 3241858, at *4. Petitioner has not shown cause for the default or that a fundamental miscarriage of justice will result if his claims are not considered. Thus, the Court may not consider the claim.[1]

### 6.     Ground Eighteen

Ground Eighteen concerns Petitioner's request for an evidentiary hearing on a newly-submitted affidavit from Billy King (also referred to throughout the proceedings as B.T., Broderick Thomas, Demetrius Thomas, Outcast, and Outkast) from testifying. The request for an evidentiary hearing was presented to the state courts for the first time in Petitioner's second petition for post-conviction relief. *See Johnson v. State*, 2011 WL 3241858, at *1. Even though King's affidavit was recently obtained, the district court and appeals court determined that the request was barred by *Knaffla*. *Id.* at *3. The effect of this determination is that the claim is

---

[1] This claim is also procedurally defaulted, as Petitioner did not fairly present it to the state district court on direct appeal or in a post-conviction petition.

procedurally barred from federal habeas review unless Petitioner shows cause for the default and actual prejudice or that a fundamental miscarriage of justice will occur if his claims are not heard. As discussed more fully below in Part II.C.3, none of these circumstances are present here.

### C.      Fairly Presented and Exhausted Claims

A federal court's review of the state court decisions underlying a state prisoner's habeas petition is "limited and deferential." *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (quotation omitted). There are three circumstances in which a federal court may grant a state prisoner's habeas petition: (1) if the state court adjudication was contrary to clearly established federal law, (2) if the state court adjudication involved an unreasonable application of clearly established federal law, or (3) if the state court adjudication was based on an unreasonable evaluation of the facts. *See* 28 U.S.C. § 2254(d).

Regarding the first circumstance, a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The second circumstance is triggered when the state court correctly identifies the governing Supreme Court precedent but unreasonably applies it to the facts at hand or when the state court unreasonably extends or refuses to extend the Court's precedent to a new context. *Id.* at 407. To warrant habeas relief in this circumstance, the state court's misapplication of the law must be "objectively unreasonable." *Id.* at 409. The final circumstance is controlled by § 2254's mandate that "a determination of a factual issue made by a State court shall be presumed to be correct.

The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 1.   Ground One

In Ground One, Petitioner claims he was denied his right to a speedy trial as guaranteed by Amendments VI and XIV of the United States Constitution. Petitioner exhausted this claim on direct appeal.

Petitioner appeared in court and demanded a speedy trial on February 10, 2004. (Resp't App. at 23.) His trial was scheduled to begin on March 22, 2004. (*Id.*) Petitioner's appointed attorney failed to appear on the first day of trial, however, as well as the next two days, and he did not return the court's telephone calls. (*Id.*) Three days later, the attorney explained to the court that he had been in another trial. (*Id.*) The court described the attorney's conduct as unprofessional and neglectful, but rescheduled the trial for June 7, 2004. (*Id.*) Petitioner's trial actually began on June 14, 2004. *Johnson*, 2006 WL 2347795, at *2. Petitioner argued on direct appeal that the nearly three-month continuance denied him his right to a speedy trial. (Resp't App. at 23.)

The United States Supreme Court has identified four factors to consider when assessing whether a delay violated a defendant's right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Unless a delay was presumptively prejudicial, which depends on the specific circumstances of each case, there is no need to delve into the other three factors. *Id.* at 530-31. With respect to the second factor, the government's attempt to delay trial for tactical reasons is weighed more heavily than an attorney's negligence, an overburdened court system, or a missing witness. *Id.* at 531. In assessing the third factor, a defendant's actual assertion of his

speedy trial right is strongly determinative of whether his right was deprived. *Id.* Finally, prejudice should be assessed in light of three interests: the prevention of "oppressive pretrial incarceration," the minimization of the defendant's anxiety and concern, and the ability of the defendant to prepare his case. *Id.* at 532. The last factor is of greatest significance. *Id.*

Here, the length of time between the assertion of the right and Petitioner's trial was a little more than four months. The Minnesota Court of Appeals determined that the delay was presumptively prejudicial under Minnesota state law. *Johnson*, 2006 WL 2347795, at *2 (citing *State v. Windish*, 590 N.W.2d 311, 315-16 (Minn. 1999)). This Court, however, must determine whether the delay was presumptively prejudicial under clearly established federal law.

There is no Supreme Court case addressing materially indistinguishable facts. In *Doggett v. United States*, the Supreme Court remarked that lower courts generally have found presumptive prejudice when a delay approaches one year. 505 U.S. 647, 652 n.1 (1992) (dicta). This remark indicates that a four-month delay would not be considered presumptively prejudicial under federal law and would not trigger a speedy trial analysis. The Eighth Circuit has determined that delays of five months and seven months do not warrant a Sixth Amendment analysis. *United States v. Patterson*, 140 F.3d 767, 772 (8th Cir. 1998) (delay of five months not presumptively prejudicial, especially since the delay was due to pretrial motions brought by the defendants); *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) (delay of seven months too brief to implicate Sixth Amendment). Thus, the Sixth Amendment does not provide Petitioner with an avenue to federal habeas relief.

Even if the delay was presumptively prejudicial, two of the other three *Barker* factors demonstrate that no federal constitutional violation occurred. As the Minnesota Court of Appeals noted, the prosecution did not delay the trial for a tactical or other reason. *Johnson*, 2006 WL

2347795, at *3. The delay was attributable solely to defense counsel's trial schedule and the complexity of the case. *Id.* Delays caused by a defendant's counsel weigh against the defendant. *Vermont v. Brillon*, 129 S. Ct. 1283, 1290-91 (2009).

With regard to Petitioner's assertion of his right to a speedy trial, he did assert the right, and his attorney failed to explain the possible consequences of continuing the trial date. *Johnson*, 2006 WL 2347795, at *3. Thus, the Minnesota Court of Appeals counted this factor in Petitioner's favor. *Id.*

The final factor, prejudice, weighs against Petitioner, as the Minnesota Court of Appeals determined. Petitioner did not show any more oppression, anxiety, or concern than a typical defendant facing trial. *See United States v. Williams*, 557 F.3d 943, 949 (8th Cir. 2009) (quoting *Morris v. Wyrick*, 516 F.2d 1387, 1391 (8th Cir. 1975) (requiring a defendant to show "the delay weighed particularly heavily on him in specific instances")). Nor did Petitioner show an inability to present witnesses or evidence because of the delay. *Johnson*, 2006 WL 2347795, at *3-4. Specifically, Petitioner's co-defendants had already agreed to testify against him before the first trial date. *Id.* at *4.

In sum, the Minnesota Court of Appeals' consideration of Petitioner's speedy trial claim was not contrary to clearly established federal law, an unreasonable application of such law, or based on incorrect factual determinations. Thus, Petitioner is not entitled to habeas relief on this claim.

### 2.      Ground Two

In Ground Two of the petition, Petitioner contests the trial court's acceptance of his waiver of right to counsel without first ruling on his request for substitute counsel. The Court interprets this claim as presenting two inquiries: (1) whether the trial court adequately considered

Petitioner's request for substitute counsel, and (2) whether Petitioner's waiver of his right to counsel was valid.

Petitioner first asked for a new lawyer before his original trial date. (Resp't App. at 28, 798.) He renewed that request after his appointed lawyer failed to appear on the first day of trial, asserting to the trial court that his attorney had visited him only once in jail, was unprepared, and had agreed to the continuance without Petitioner's consent. (Resp't App. at 28, 780-81.) The trial court informed Petitioner that it would ask the public defender's office about the possibility of appointing substitute counsel. (Resp't App. at 789-90.) Petitioner's lawyer said he believed he could adequately represent Petitioner and there was no conflict. (Resp't App. at 791.)

At a subsequent hearing on May 12, 2004, the court recounted the procedural history of the case, including the complicated nature of the charges and involvement of four co-defendants, and the expectation that cooperating witnesses and at least one co-defendant would testify against Petitioner. (Resp't App. at 801-02.) The court also relayed the position of the public defender's office, which was that Petitioner's counsel could adequately represent him, despite Petitioner's unhappiness with the representation, and that the public defender's office would not appoint another attorney to represent him. (Resp't App. at 804.) The court told Petitioner his choices were to proceed with his original lawyer, to hire a lawyer, or to represent himself. (Resp't App. at 804-05.) Petitioner said he did not want his lawyer to represent him and preferred to represent himself. (Resp't App. at 805.) He reiterated that his lawyer had visited him only twice and waived his right to a speedy trial without his consent. (Resp't App. at 805-06.) The court reemphasized the complicated nature of the case and urged Petitioner to think over his decision carefully. (Resp't App. at 816-17.)

Given the chance to respond, Petitioner's lawyer said he had produced copies of all discovery to Petitioner and discussed with him in person the evidence against him. (Resp't App. at 819-20.) Counsel said he had also advised Petitioner that he needed additional time to investigate and prepare his defense, and he had interpreted Petitioner's agreement to this course of action as his acquiescence to the continuance. (Resp't App. at 820-21.) Throughout the representation thus far, counsel said he had spoken to Petitioner several times on the phone and visited him three times in jail. (Resp't App. at 821.) He believed Petitioner's dissatisfaction stemmed from his legal advice and assessment of Petitioner's chance of prevailing. (Resp't App. at 821-22.)

Approximately a week later, Petitioner appeared before the Chief Judge of Hennepin County District Court, the Honorable Kevin S. Burke, concerning his decision to proceed pro se. (Resp't App. at 825). *See Johnson*, 2006 WL 2347795, at *5. Judge Burke advised Petitioner of his rights, as well as the risks of self-representation, at great length. (Resp't App. at 825-52.) Petitioner maintained he wanted to represent himself. (Resp't App. at 852.)

By the next day, however, Petitioner changed his mind and informed the trial court he wanted to retain his attorney. (Resp't App. at 862.) Even though he did not necessarily want his lawyer to represent him, he did not feel able to represent himself. (Resp't App. at 862-63.) He expressed particular concern that his lawyer would not follow his direction on trial tactics or subpoena certain witnesses. (Resp't App. at 866.)

After Petitioner's trial was underway and the jury selected, Petitioner changed his mind again. (Resp't App. at 895.) He told the court his attorney had not personally visited him enough to review trial plans and evidence. (Resp't App. at 896.) He also blamed his attorney for alerting the prosecutor to witnesses that the prosecutor had inadvertently omitted from a witness list to be

22

used in the juror screening process. (Resp't App. at 897-98.) The court explained to Petitioner that his attorney had a duty to the court to ensure all potential witnesses were included on the list. (Resp't App. at 899.) Petitioner then complained he had not been present for a *Rasmussen* hearing the previous day. (Resp't App. at 900.) To this, the court responded that no such hearing had occurred, because there was no basis for such a hearing. (Resp't App. at 900-903.) Petitioner was not appeased by the court's explanations, however, and insisted on representing himself. (Resp't App. at 922.)

The court then advised Petitioner of the nature of the charges against him, the lesser-included offenses, the range of allowable punishments, his possible defenses, the effect of mitigating circumstances, and the advantages and disadvantages of waiving counsel. (Resp't App. at 915-20.) The court also questioned Petitioner about his mental health and education, his understanding of the changes against him, his understanding of his right to an attorney, the duties expected of pro se parties, and his understanding of the trial and jury system. (Resp't App. at 925-32.) Satisfied with Petitioner's responses, the court accepted Petitioner's waiver of right to counsel. (Resp't App. at 932.)

On direct appeal to the Minnesota Court of Appeals, Petitioner argued that the trial court erred by accepting his waiver of counsel without first ruling on his request for appointment of substitute counsel. *Johnson*, 2006 WL 2347795, at *4. The state appeals court disagreed, ruling that the trial court acted within its discretion in declining to appoint a new lawyer and that Petitioner had not shown exceptional circumstances warranting substitution of counsel. *Id.* The appeals court also determined Petitioner's waiver of his right to counsel was knowing, voluntary, and intelligent. *Id.* at *5.

### a.      Petitioner's Request for Substitute Counsel

The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to counsel. U.S. Const. Amend. VI. However, the right does not include the appointment of an attorney who will advance meritless theories, proceed according to a defendant's wishes, or develop a close relationship with the defendant. *See United States v. Rodriguez*, 612 F.3d 1049, 1055 (8th Cir. 2010) (citations omitted). Nor does the right bestow on a defendant "the absolute right to counsel of his own choosing." *Carey v. Minnesota*, 767 F.2d 440, 441 (8th Cir. 1985).

Whether to grant a request for substitute counsel is a matter of the trial court's discretion. *Nerison v. Solem*, 715 F.2d 415, 418 (8th Cir. 1983). To obtain a new attorney, "the defendant must show justifiable dissatisfaction with his appointed counsel." *Id.* Possible circumstances include "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991). When a defendant makes an ostensibly valid complaint about his lawyer, the court "has an obligation to inquire thoroughly into the factual basis of the defendant's dissatisfaction." *United States v. Hart*, 557 F.2d 162, 163 (8th Cir. 1977). A defendant's refusal to communicate with his attorney will not suffice, *Hunter v. Delo*, 62 F.2d 271, 274 (8th Cir. 1995), nor will "a defendant's frustration with counsel's performance or disagreement with his tactical decisions," *United States v. Boone*, 437 F.3d 829, 839 (8th Cir. 2006).

Contrary to Petitioner's depiction of the proceedings, the trial court did rule on his requests for substitute counsel. The answer, each time, was no. Even though the court apparently based its decision primarily on the policy of the public defender's office not to provide substitute counsel in cases of alleged ineffectiveness, the court made several thorough inquiries into the

24

factual basis of Petitioner's dissatisfaction, and there is sufficient evidence in the record to support a finding that Petitioner's dissatisfaction with his attorney was not justifiable.

Although counsel's failure to appear on the first day of Petitioner's trial was, at a minimum, neglectful, counsel had a legitimate reason for his absence: he was already in another trial that week. Counsel also explained that he had previously discussed the possibility of a continuance with Petitioner and thought Petitioner acquiesced. While Petitioner disputes having this conversation, counsel's need for additional time to investigate the case and prepare a defense was reasonable. Petitioner's case was unusually complex due to the nature of the charges and the anticipated testimony of cooperating witnesses and co-defendants. Furthermore, Petitioner suffered no prejudice from the continuance, and his federal speedy trial right was not impinged. All considered, Petitioner's counsel's initial missteps did not create a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication.

As the case approached trial, Petitioner's dissatisfaction with his attorney stemmed from his perceived level of counsel's commitment to his case, counsel's tactical decisions and legal advice, and the frequency of counsel's visits to the jail. However, Petitioner's attorney declared he was working on Petitioner's case and maintaining communication with Petitioner. The trial court made no findings to the contrary, and nothing in the record supports a finding of a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication. Nor has Petitioner shown that his lawyer was unprepared, unwilling, or unable to represent him. *See United States v. Taylor*, 652 F.3d 905, 908-09 (8th Cir. 2011). Thus, the trial court acted well within its discretion in denying Petitioner's request for substitute counsel.

### b.      Petitioner's Waiver of His Right to Counsel

A criminal defendant's right to proceed without counsel is also constitutionally protected. *See Faretta v. California*, 422 U.S. 806, 814-15 (1975) (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). A waiver of the right to counsel must be knowing, intelligent, and voluntary. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).

Petitioner asserts his waiver was not voluntary because he was faced with a Hobson's Choice of proceeding with ineffective counsel or no counsel. If a defendant cannot establish justifiable dissatisfaction with his present, competent attorney, however, his waiver of counsel "will be deemed voluntary." *Taylor*, 652 F.3d at 909 (quoting *United States v. Taylor*, 183 F.3d 1199, 1203 (10th Cir. 1999)). Petitioner was cautioned numerous times that no replacement counsel would be appointed. Before allowing Petitioner to proceed pro se, the trial court conducted a thorough *Faretta* hearing and warned Petitioner of the disadvantages of self-representation. Petitioner's decision to discharge his lawyer despite these admonitions "cannot be termed anything other than a voluntary waiver of his right to have counsel represent him at trial." *Meyer v. Sargent*, 854 F.2d 1110, 1114 (8th Cir. 1988).

### c.      No Habeas Relief Warranted for Ground Two

In sum,  the Minnesota state courts' consideration of Petitioner's Sixth Amendment claim and his waiver of right to counsel was not contrary to clearly established federal law, an unreasonable application of such law, or based on incorrect factual issues. Consequently, habeas relief is foreclosed on these claims.

### 3.      Grounds Three and Thirteen

Ground Three of the petition challenges the trial court's exclusion of an alibi witness, Broderick Thomas (also known as B.T., Demetrius Thomas, Billy King, Outcast, and Outkast),

on the ground that the witness was not disclosed prior to trial. (Pet. at 6; Pet'r Reply at 9.) On direct appeal to the Minnesota Court of Appeals, the bulk of Petitioner's argument centered on state discovery rules, which are not applicable on federal habeas review. Petitioner also argued, however, that the exclusion of Thomas violated his right to present witnesses in his defense under *Washington v. Texas*, 388 U.S. 14, 19 (1967).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.*

In a federal habeas case, "[q]uestions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir. 1993). The petitioner must establish that the evidentiary ruling was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Moore v. Wyrick*, 760 F.2d 884, 886 (8th Cir. 1985).

Petitioner did not advise the trial court that he wanted to call Thomas as a witness until after the prosecution rested its case. *See Johnson*, 2006 WL 2347795, at *6. The prosecutor objected to Petitioner's request on the grounds that it would cause a delay of at least two days and would prejudice the state's case. *See id.* The Minnesota Court of Appeals upheld the trial court's decision to exclude the evidence based on Petitioner's failure to provide adequate notice to the prosecution. *Id.* More importantly, the court noted, when Thomas was located and given

the opportunity to testify at Petitioner's sentencing trial, Thomas exercised his Fifth Amendment privilege and declined to testify. *Id.* at *7. Thomas' decision not to testify on Petitioner's behalf at his sentencing indicates he would not have testified for Petitioner at his trial. *Id.* And even if Thomas had testified, testimony from the victim and other witnesses established that Petitioner was guilty of the charged offenses. *Id.* Thus, any error in precluding Thomas' testimony was harmless. *Id.*

In light of the inculpatory evidence introduced at Petitioner's trial and Thomas' decision not to testify at Petitioner's sentencing, this Court agrees that the trial court's exclusion of Thomas' testimony did not deny Petitioner due process or render his trial unfair.

In Ground Thirteen of the petition, Petitioner contends that the trial court unduly influenced Thomas' decision to testify and therefore violated Petitioner's right to due process. Petitioner made this argument on direct appeal, citing *Webb v. Texas*, 409 U.S. 95 (1972). (Resp't App. at 37.) Specifically, Petitioner challenged the trial court's admonition to Thomas at Petitioner's sentencing that he had the right not to testify and the right to consult an attorney.

In *Webb*, a federal habeas petitioner challenged the trial court's admonition to the petitioner's only witness at trial. 409 U.S. at 95. The witness had a prior record and was incarcerated. As recited in the Supreme Court's opinion, the trial court told the witness,

> "Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [sic] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell

the truth and if you do, that is all right, but if you lie you can get into real trouble. The [C]ourt wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking."

*Id.* at 95-96 (quotations in original). When the petitioner's counsel told the court he was going to call the witness despite the admonition, the court said, "Counsel, you can state the facts, nobody is going to dispute it. Let him decline to testify." *Id.* at 96.

The Supreme Court had no disagreement with the trial court's warning to the witness of his right not to testify and the need to tell the truth. *Id.* at 97. But when the trial judge conveyed his belief that the witness would lie, and that he would likely be convicted of and sentenced for perjury, "the unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.* at 97-98. Under the particular circumstances at hand, the Court concluded "that the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." *Id.* at 98.

No comparable remarks were made by the trial judge in Petitioner's case. As recounted in Petitioner's appellate brief to the Minnesota Court of Appeals, the trial court advised Thomas of his right not to testify and his right to an attorney. (Resp't App. at 38.) The court then continued to advise and clarify with Thomas that he understood his rights, even though Thomas said he wanted to testify. (*Id.*)

THE COURT: Are you telling – what are you telling the Court, are you waiving your right – I mean, would you like

THE WITNESS: You're telling me *you* want me to talk to a lawyer?

THE COURT: Sorry?

THE WITNESS: You saying *you* want me to talk to a lawyer?

THE COURT: You just told me you didn't want to talk to a lawyer.

THE WITNESS: I'm saying, yes, I want to talk to a lawyer.

(*Id.*) (emphasis added in appellate brief).

Even though the trial court repeatedly advised Thomas of his rights and misunderstood at first whether Thomas was waiving those rights, the court did not threaten Thomas with perjury charges or use unnecessarily strong language that effectively drove Thomas off the witness stand. Accordingly, no due process violation occurred.

### 4.      Ground Six

In Ground Six, Petitioner asserts the trial court erred in instructing the jury on accomplice liability. In response to a jury question during deliberations, the trial court advised the jury of the legal definition of "aid and abet." (Resp't App. at 1130.)

> All that is necessary for a conviction of aiding in a crime is that the accused plays at least some knowing role in the commission of the crime and takes no steps to thwart its completion. A person may be held criminally liable as an aider and abettor without actively participating in the overt act constituting the primary offense. Criminal intent may be inferred from presence, companionship and conduct before and after the offenses are committed.

(Resp't App. at 1135.)

On direct appeal, Petitioner argued that the phrase "[a]ll that is necessary" diminished the state's burden to prove beyond a reasonable doubt Petitioner's assistance to others in committing the charged offenses. (Resp't App. at 49.) He cited *In re Winship*, 397 U.S. 358, 364 (1970), for the general proposition that every fact necessary to prove a crime must be established beyond a reasonable doubt. (Resp't App. at 49.) The Minnesota Court of Appeals noted that the trial court had previously instructed the jury of the state's burden to prove Petitioner's guilt beyond a

reasonable doubt, and found that the additional instruction did not contradict the original one. *Johnson*, 2006 WL 2347795, at * 11.

A jury instruction may not be assessed in isolation, "but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). To warrant federal habeas relief, an offensive jury instruction must have "so infused the trial with unfairness as to deny due process of law." *Id.* (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)).

In its general instructions to the jury, the trial court told the jury to consider the instructions as a whole. (Resp't App. at 1100.) The court instructed the jury that Petitioner was presumed innocent and that the state had the burden to prove guilt beyond a reasonable doubt. (Resp't App. at 1101.) The court further instructed the jury,

> The defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it or has intentionally advised, hired, counseled, conspired with or otherwise procured the other person to commit the crime.

> If the defendant intentionally aided another person in committing a crime or intentionally advised, hired, counseled, conspired with or otherwise procured the other person to commit it, the defendant is also guilty of any other crime the other person commits while trying to commit the intended crime if that other crime was reasonably foreseeable as a possible consequence of trying to commit the intended crime.

> The defendant is guilty of a crime, however, only if the other person commits a crime. The defendant is not liable criminally for aiding, advising, hiring, counseling, conspiring or otherwise procuring the commission of a crime unless some crime, including an attempt, is actually committed.

> Now, in this case, the defendant is charged with aiding and abetting as to each count of the amended complaint, aiding and abetting murder in the first degree as well as aiding and abetting kidnapping.

(Resp't App. at 1108-09.) The court next informed the jury of the elements of each crime, and said that if each element were proven beyond a reasonable doubt, Petitioner would be guilty, but if any element were not proven beyond a reasonable doubt, Petitioner would be not guilty. (Resp't App. at 1116.)

Considering all of the jury instructions together, the additional instruction did not contradict the original instructions. Moreover, a reasonable interpretation of the aiding and abetting instruction in the context of the other instructions is that the state had to prove beyond a reasonable doubt that Petitioner played at least some knowing role in the commission of a crime and took no steps to thwart its completion. As such, the instruction did not infuse Petitioner's trial with unfairness or deny him due process.

### 5.      Ground Seven

The trial court discharged the jury on the same day it found Petitioner guilty. *Johnson*, 2006 WL 2347795, at *12. The next day, the United States Supreme Court decided *Blakely v. Washington*, which held that a jury must determine beyond a reasonable doubt any factual findings supporting an upward departure from a statutory maximum sentence. 542 U.S. 296, 303-04 (2004). *See Johnson*, 2006 WL 2347795, at *12. At the state's request and to comply with *Blakely*, the trial court convened a sentencing jury to determine whether certain aggravating factors justified an upward departure from the state sentencing guidelines. *See id.* The jury found three aggravating factors for each offense, and the court relied on those factors in departing upward. *Johnson*, 2010 WL 2485653, at *1 n.1. In Ground Seven of the petition, Petitioner challenges the trial court's empanelment of the sentencing jury and consequent upward departure as a violation of the Double Jeopardy Clause of the United States Constitution.

The Fifth Amendment guarantees no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The prohibition against double jeopardy "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 306-07 (1984). Petitioner's claim falls under the second circumstance.

According to clear Supreme Court precedent, "the sentencing phase of a single prosecution" does not "amount to a successive prosecution." *Schiro v. Farley*, 510 U.S. 222, 230 (1994). The Court has also explained that double jeopardy generally is inapplicable in the sentencing context because a sentencing proceeding does not place the individual in jeopardy for an "offense." *Monge v. California*, 524 U.S. 721, 728 (1998) (citations omitted).

On appeal to the Minnesota Court of Appeals, Petitioner argued that the aggravating factors determined by the sentencing jury were elements of the greater offenses of conviction. He relied on language in a footnote of *Apprendi v. New Jersey*, in which the Court stated "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict," 530 U.S. 466, 494 n.19 (2000). The Minnesota Court of Appeals rejected Petitioner's interpretation of this language, favoring instead the state's explanation that the *Apprendi* Court was merely making an analogy "to explain why sentencing-enhancement facts, 'like elements of the offense,' must be submitted to a jury and proven beyond a reasonable doubt." *Johnson*, 2006 WL 2347795, at *14. Furthermore, the state argued, neither *Apprendi* nor *Blakely* indicated that submitting aggravating factors to a sentencing jury violated double-jeopardy principles. *Id.* If the Court had opposed the use of sentencing juries on double-

33

jeopardy grounds, the state reasoned, it would have mandated the statutory maximum sentence in *Apprendi* and the presumptive sentence in *Blakely* instead of remanding those cases for further proceedings. *Id.* After considering these arguments, the Minnesota Court of Appeals concluded "that aggravating factors are not elements of a greater offense and, therefore, that the submission of such factors to a sentencing jury is not a second trial for a greater offense based on the same facts as the first trial." *Id.*

Petitioner has not cited any Supreme Court precedent contradicting the Minnesota Court of Appeals' conclusion, nor has he shown that the Minnesota Court of Appeals was objectively unreasonable in applying *Apprendi* to the facts of his case. Consequently, Petitioner is not entitled to habeas relief on Ground Seven.

### D.    Petitioner's Motion for Reconsideration of Appointment of Counsel and for Appointment of an Investigator

Petitioner moves for (1) reconsideration of the Court's order denying appointed counsel and (1) the appointment of an investigator. The Court denied Petitioner's motion for appointed counsel on September 13, 2011, finding

> that neither the facts nor the legal issues raised in the petition are so complex as to warrant appointment of counsel. Based on Petitioner's submissions to date, it appears that he has the threshold ability to articulate his claims, to argue his positions, and to communicate effectively with the Court. The Court does not believe that appointment of counsel would substantially benefit the Court or Petitioner.

(Order at 2, Sept. 13, 2011, ECF No. 5.)

Nothing has changed the Court's view. Petitioner has demonstrated ample ability to articulate his claims, argue his positions, communicate effectively, and obtain affidavits and other evidence in support of his petition. Indeed, Petitioner's reply in support of his petition was comprised of a ninety-one page memorandum, including numerous legal citations and citations

34

to state court proceedings, and several exhibits including affidavits he independently obtained. (Reply, Jan. 23, 2012, ECF No. 21.) Consequently, the Court recommends that Petitioner's Motion for Reconsideration of the Appointment of Counsel and for an Investigator be denied.

## III.  RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     The Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**;

2.     Petitioner's Motion for Reconsideration of the Appointment of Counsel and for an Investigator (ECF No. 19) be **DENIED**;

3.     This action be **DISMISSED WITH PREJUDICE**; and

4.     **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: July 2, 2012

   s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **July 19, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.